UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
IN RE WORLD TRADE CENTER LOWER
MANHATTAN DISASTER SITE LITIGATION

**ORDER AND OPINION
APPROVING SETTLEMENTS
IN 82 CASES**

21 MC 102 (AKH)

------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

The terrorist attacks of September 11, 2001 spawned one of the largest and most complex mass tort litigations in history. The final stage in this saga involves the claims of over 1,000 individuals who worked in the buildings surrounding the World Trade Center site and allegedly developed various respiratory and gastrointestinal illnesses as a result of their work. Many of these cases are now settling. *See, e.g., In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 21 MC 102, 2015 WL 1262283 (S.D.N.Y. Mar. 18, 2015) (approving settlements between 78 plaintiffs and 98 defendants). This Order deals with another 82 plaintiffs currently represented by the law firms of Gregory J. Cannata & Associates, LLP and Robert A. Grochow, P.C. (the "Cannata Plaintiffs"). These 82 plaintiffs have reached a settlement in principle with nearly all of the defendants against whom they brought claims, and seek approval of the settlements and regulation of attorneys' fees. For the following reasons, the Cannata Plaintiffs' motion for approval is granted.

**I.    Background**

I have previously provided the procedural history of this stage of the September 11th litigation. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 2015 WL 1262283. To reach their settlements, the Cannata Plaintiffs used an approach that was functionally equivalent to that used to reach the settlement with the City of New York and its

1

captive insurer (the "Captive Settlement") in the previous stage of the September 11th litigation. I approved that settlement in June 2010 as fair and reasonable. *See* Order Approving Modified and Improved Agreement of Settlement, 21-mc-100, ECF No. 2091 (S.D.N.Y. June 23, 2010). More importantly, so did the parties. Over 99% of plaintiffs opted in to the settlement, discharged the defendants, and discontinued their cases. Similarly, all remaining defendants who contributed additional amounts in the end approved the settlement. The total compensation paid to the plaintiffs was over $600 million.

In order to settle these 82 cases, the parties, with the help of Special Masters Aaron Twerski and James Henderson, devised a comprehensive plan for valuing each plaintiff's separate case, taking into consideration the severity of injuries incurred (measured by objective manifestations), the conditions of individual buildings and the scope and scale of work performed, and the number of plaintiffs and defendants associated with each building. The parties then negotiated and agreed, again with substantial assistance from the Special Masters, to aggregate amounts per building to be apportioned to the various plaintiffs who worked in the building and to be paid by the various defendants associated with each building.

The specific allocations to individual plaintiffs are to be calculated according to a "Settlement Plan," developed by the Cannata Plaintiffs. *See* Decl. Gregory J. Cannata Supp. Mot. Approve Settlements ("Cannata Decl."), Exh. 2. The Settlement Plan awards points to individual plaintiffs based upon the diagnosis of various alleged conditions, the severity of the alleged conditions, and any documented treatment received. Each condition for which points are awarded has been recognized by the National Institute for Occupational Safety and Health as related to exposure to the World Trade Center dust. Adjustments to the points are made based upon an individual plaintiffs' age, smoking history, death, lost earnings, participation in the

2

Captive Settlement, time spent working in individual buildings, and other plaintiff-specific information. The Garretson Resolution Group ("Garretson"), a neutral third-party consultant experienced in mass tort settlements, and the neutral administrator appointed by the Court to administer the Captive Settlement, has approved this methodology as "reasonable, objective, fair, and efficient" reflecting the "best practices of modern allocation methodology within aggregate settlements." *See* Cannata Decl., Exh. 3.

The Cannata Plaintiffs retained Garretson to calculate the points attributable to each individual's medical and economic records. In addition, Ball Baker Leake LLP ("Ball Baker"), an independent public accounting firm, has been retained to calculate the specific amounts allocated to each plaintiff based upon the point system and the time individual plaintiffs worked in each building. Ball Baker will also calculate the net amount to be paid to each of the Cannata Plaintiffs, taking into account each plaintiff's share of the common expenses, case-specific expenses, and a 25% attorneys' fee.

## II. Discussion

### A. Settlement Methodology and Amount

As I have previously held, Courts confronted with mass tort cases have an obligation to ensure the fairness of settlements entered into by the parties, in the aggregate and as applied to individual plaintiffs. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 21 MC 102, 2015 WL 1262283 (S.D.N.Y. Mar. 18, 2015); *In re World Trade Ctr. Disaster Site Litig.*, No. 21 MC 100, ECF No. 2091 (S.D.N.Y. June 23, 2010); *see also In re Zyprexa Liability Litig.*, 424 F. Supp. 2d 488, 491-92 (E.D.N.Y. 2006). Accordingly, I ruled by Order dated July 25, 2014 that all settlements in the 21 MC 102 docket would be subject to review by this Court for fairness and reasonableness, similar to the methodology I used to review

3

fairness and adequacy in the 21 MC 100 litigation. *See* Order Regulating Settlement Procedures and Granting, in Part, Motion to Preserve Confidentiality of Settlements, No. 21 MC 102, ECF No. 5340, at 1-2 (S.D.N.Y. July 25, 2014).

There is a "strong public policy" in favor of the settlement of complex litigation. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). Courts reviewing settlement agreements consider two aspects for fairness: the process utilized in reaching the settlement and the substantive terms of the settlement. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement."). Given the current litigation's similarity to complex class actions, the factors considered by courts in deciding the fairness of class settlements provide a useful guide.

Courts consider several factors in determining the procedural fairness of a settlement. The settlement should be the result of arm's length, hard-fought negotiations rather than the collusion of otherwise adversarial parties. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009). Counsel conducting the negotiations should be experienced in similar cases. *See Charron v. Weiner*, 731 F.3d 241, 247 (2d Cir. 2013). Furthermore, settlement should come at a time when sufficient discovery has been conducted, enabling counsel and the parties accurately to assess the strengths and weaknesses of their cases. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85-86 (2d Cir. 2001).

Once the proponent establishes that the settlement was reached as a result of a fair process, there is a presumption that the terms of the settlement are also fair and reasonable. *See McReynolds*, 588 F.3d at 803 ("We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length

4

negotiations between experienced, capable counsel after meaningful discovery.") (internal quotations omitted). Nonetheless, courts consider several aspects of the substantive terms of a settlement for fairness. These considerations include the complexity, expense, and duration of the litigation; the strengths and weaknesses of the plaintiffs' cases; the attendant risks of bringing the case to trial; and the possible defenses of the defendants. *See Charron*, 731 F.3d at 247. Settlement amounts should not be compared to a "possible recovery in the best of all possible worlds." *In re Imax Secs. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2013). Rather, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc.*, 396 F.3d at 119.

After careful review of both the methodology used in reaching the settlements and the aggregate settlement amount, I conclude that approval of the settlement is appropriate. Gregory J. Cannata & Associates, LLP and Robert A. Grochow, P.C. are competent law firms with considerable experience in mass tort litigations, including the 9/11 litigation since 2005. Their negotiations with the defendants were adversarial, there is no evidence of collusion and resolution came at a time when discovery was sufficiently advanced to permit the parties to fairly evaluate the value of the lawsuits they filed. *See In re Bear Stearns Cos. Secs. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (finding settlement procedurally fair where parties "conducted extensive investigations, obtained and reviewed millions of pages of documents, and briefed and litigated a number of significant legal issues" because parties had the ability to "gauge the strengths and weaknesses of their claims and the adequacy of the settlement").

Because the settlements are the result of a fair process, the consideration to be paid is presumably also fair, adequate, and reasonable. *See McReynolds*, 588 F.3d at 803. But presumptions are not needed to evaluate the fairness and adequacy of these settlements because the amounts, on their own, are adequate and reasonable.

The aggregate settlement amount is $53,801,796.96. The payments to the plaintiffs range from $25,000 to $1,453,089.72, according to the considerations discussed above. The average settlement amount is $656,119. The precise payment to each plaintiff is set out in a schedule submitted by the Cannata and Grochow law firms and filed under seal.

These cases present difficult complexities regarding the conditions of the workplaces, the safety protections extended, and the causal nexus between the ambient atmosphere and the diseases complained of by the workers. Trial is likely to be risky, long, and expensive, made longer and more complicated by the presence of numerous defendants. Further, the settlement amounts here compare favorably with the Captive Settlement recorded in the 21 MC 100 cases. Accordingly, I find that the settlement terms are well within the "range of reasonableness" reflective of the "uncertainties of law and fact" and the "concomitant risks and costs" of litigating the cases through trial. *Wal-Mart Stores, Inc.*, 396 F.3d at 119. I therefore approve the settlements and grant Plaintiffs' motion in that regard.

**B.    Attorneys' Fees**

Plaintiffs' counsel also seeks approval of a 25% fee after a deduction of common and case-specific expenses. Counsel has reduced their request for fees, from the 33 1/3% provided by their retainer agreements with their clients to 25%, the percentage fee I previously approved in the Captive Settlement. Furthermore, counsel has shown themselves to be competent and zealous advocates for their clients throughout the litigation and, particularly,

during the Court-ordered settlement negotiations. Accordingly, I find a fee of 25% to be reasonable and hereby approve it.

### III. Conclusion

Plaintiffs' motion to approve the settlements is GRANTED. The Clerk shall mark the motion (Doc. No. 5859) terminated. The approved settlement results in the resolution of all the claims brought by 81 of the 82 settling plaintiffs. Accordingly, the Clerk shall dismiss with prejudice the Complaints of the 81 plaintiffs and close the cases listed in Exhibit A, attached hereto, subject to restoration by any party in the event settlement is not finalized. The sole remaining plaintiff, Antoni Lysomirski, has settled with most, but not all, defendants against whom he filed claims. The settling and non-settling defendants in Lysomirski's case are identified in Exhibit B, attached hereto. The Clerk shall dismiss with prejudice Lysomirski's Complaint against the settling defendants identified in Exhibit B, subject to restoration by any party in the event settlement is not finalized. Lysomirski shall file an Amended Complaint by June 30, 2015, consistent with this Order and Opinion, dropping the settling defendants from the caption and the allegations, but retaining the paragraph numbering of the existing Complaint. Defendants' Answers need not be amended.

SO ORDERED.

Dated:  New York, New York
        June 9, 2015

ALVIN K. HELLERSTEIN
United States District Judge

7

Exhibit A

| Plaintiffs Who Have Settled in Principle With All Defendants | Index Number |
|---|---|
| Acosta, Ruben | 06-cv-5335 |
|  | 08-cv-1334 |
|  | 10-cv-6926 |
| Akoulov, Vladmir | 10-cv-6860 |
| Arce, Monica | 06-cv-5323 |
| Ayinde, Olanrewaju | 10-cv-6867 |
| Bajguz, Aleksander | 06-cv-5338 |
|  | 06-cv-02528 |
|  | 07-cv-1566 |
| Balcer, Waldemar | 06-cv-5325 |
| Bello, Jose | 06-cv-5164 |
| Campuzano, Joaquin | 07-cv-1478 |
| Cardenas, Carlos | 09-cv-0681 |
|  | 10-cv-06907 |
| Castro, Hector | 07-cv-05342 |
| Chapman, Robert | 10-cv-1372 |
|  | 10-cv-06908 |
| Checo, Manuel | 05-cv-1093 |
|  | 06-cv-6963 |
| Ciborowski, Henryk | 10-cv-4226 |
| Cieslak, Romuald | 05-cv-6240 |
|  | 05-cv-6285 |
|  | 05-cv-6286 |
|  | 06-cv-13479 |
| Collado, Jose | 08-cv-9717 |
| Collado, Yudelka | 08-cv-9718 |
| Czerwinski, Marian | 08-cv-6805 |
| Daikoku, Alex | 06-cv-5342 |
| Dobrowolski, Jan | 10-cv-6859 |
| Dul, Alojzy | 08-cv-9065 |
| Encarnacion, Maria | 09-cv-3099 |
| Espinoza, Alonso | 08-cv-9720 |
|  | 10-cv-6902 |
| Estrella, Columbina | 09-cv-2818 |
| Faltynowicz, Stanislaw | 08-cv-2616 |
| Foremska, Lucyna | 05-cv-3090 |
|  | 06-cv-5392 |
| Galazka, Jadwiga | 08-cv-9067 |

Exhibit A

| | |
|---|---|
| Galazka, Jozef | 06-cv-5343 |
| | 08-cv-6722 |
| | 10-cv-6903 |
| Ginter, Janusz | 06-cv-5337 |
| Glowaty, Marek | 09-cv-10591 |
| Iturralde, Gustavo | 06-cv-5281 |
| Jastrzebowski, Eugeniusz | 06-cv-5289 |
| Kacperski, Zbigniew | 09-cv-5233 |
| | 10-cv-06906 |
| Khomik, Volodomyr | 06-cv-5282 |
| Koszelnik, Anatol | 06-cv-5283 |
| Kowalewski, Janusz | 10-cv-6882 |
| Kowalewski, Tadeusz | 06-cv-1521 |
| Krupinski, Leszek | 06-cv-1519 |
| | 07-cv-0083 |
| Krysiuk, Ryszard | 08-cv-6804 |
| Kucharski, Zbigniew | 08-cv-9069 |
| Kwasnik, Wladyslaw | 07-cv-11291 |
| Lejtman, Slawomir | 08-cv-5709 |
| Lelek, Antonio | 10-cv-6862 |
| Liriano, Maritza | 06-cv-5327 |
| Lupinski, Boguslaw | 05-cv-6284 |
| | 06-cv-8308 |
| Madej, Jozef | 10-cv-6865 |
| Maksimiuk, Marian | 06-cv-5291 |
| Matuszewski, Piotr | 06-cv-1514 |
| Mierzejewski, Ireneusz | 06-cv-1513 |
| Miroschnychenko, Oleksiy | 10-cv-6883 |
| Mnich, Marian | 08-cv-5764 |
| Moreno, Maria | 07-cv-01669 |
| Muszkatel, Jerzy | 06-cv-5285 |
| Naranjo, Jose | 06-cv-1517 |
| | 07-cv-0082 |
| Ouglyk, Jaroslav | 10-cv-6864 |
| Parra, Miller | 06-cv-5284 |
| Perzynska, Irena | 06-cv-5345 |
| | 10-cv-6900 |
| Pogorzelski, Jozef | 06-cv-2748 |
| Portilla, Lucila | 10-cv-6870 |
| Puello, Maria | 07-cv-11294 |

| Name | Case Number |
|---|---|
| Ramirez, Iris | 05-cv-5666 |
| | 06-cv-1531 |
| Ramirez, Nubia | 09-cv-3101 |
| Ramirez, Ramona | 10-cv-0366 |
| Retelski, Marian | 10-cv-6868 |
| Ropel, Waldemar | 06-cv-1520 |
| Sanchez, Alex Anthony | 05-cv-1091 |
| Skrzeczkowski, Eugeniusz | 07-cv-4517 |
| | 06-cv-2881 |
| Sobol, Andrzej | 06-cv-4171 |
| Socha, Marek | 09-cv-0680 |
| Sowa, Miexzyslaw | 05-cv-2446 |
| | 07-cv-7982 |
| Szalaj, Zbyszek | 06-cv-5336 |
| Urso, Joseph | 05-cv-4081 |
| Vargas, Edwin | 06-cv-5326 |
| Velez, Noel | 10-cv-6869 |
| Vynar, Mykhalo | 08-cv-6809 |
| Wajda, Andrej | 05-cv-6269 |
| | 06-cv-15192 |
| Wszolkowski, Dariusz | 06-cv-5344 |
| Zalewski, Boguslaw | 06-cv-1525 |
| | 06-cv-01524 |
| Zanabria, Miguel | 06-cv-5319 |
| Zdanowicz, Jan | 09-cv-2258 |
| Zietek, Andrzej | 09-cv-3770 |
| Zygmunt, Mieczyslaw | 09-cv-0679 |

| Plaintiff Who Has Partially Settled | Index Number |
|---|---|
| Lysomirski, Antoni | 10-cv-6863 |
| **Remaining Defendants:** <br> 52 Habitat Co. <br> RB 52 Co. LLC | |
| **Defendants Who Are Settling:** <br> 150 Broadway Corp. <br> 150 Broadway N.Y. Assocs. L.P <br> 233 Broadway Owners, LLC <br> 25 Broadway Office Properties, LLC <br> ACTA Realty Corp. <br> AT&T Wireless Services, Inc. <br> Bailey N.Y. Associates <br> <br> J.W. Realty Co. LLC <br> <br> New York City Industrial Development Agency | |